UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PAN INDUSTRIA, F/K/A LION
POWER SYSTEMS, INC.,

      Plaintiff/Counter Defendant,

v.

                                                  Civil No. 2:25cv268

JAMES S. COLEMAN,

      Defendant/Counter Claimant,

and

MUTANT, INC.
RICHARD S. MARTEN,
CRAIG HUTCHISON,
PETER LAU, and
JOSHUA LEVY,

      Counter Defendants.

## OPINION AND ORDER

This matter is before the Court on James S. Coleman's ("Coleman") Rule 12(b)(6) motion to dismiss the complaint. ECF No. 10. Also pending before the Court are two Rule 12(b)(6) motions to dismiss Coleman's amended counterclaim, the first filed by Plaintiff/Counter Defendant Pan Industria, f/k/a Lion Power Systems, Inc. ("Lion"),[1] ECF No. 23, and the second filed by the remaining five Counter Defendants (the "Third-Party Counter Defendants"), ECF No. 34. For the reasons stated below, Coleman's

---

[1] Lion previously filed a motion to dismiss Coleman's original counterclaim. ECF No. 13. Such motion is **DISMISSED as MOOT** in light of Coleman's filing of an amended counterclaim.

motion to dismiss the complaint is **DENIED**, Lion's motion to dismiss the amended counterclaim is **GRANTED in part and DENIED in part**, and the Third-Party Counter Defendants' motion to dismiss the amended counterclaim is **GRANTED**. As detailed herein, some of the counterclaims are dismissed without prejudice to Coleman's right to file a second amended counterclaim.

## I. FACTUAL BACKGROUND

The instant case arises from contract disputes between Coleman and Lion following the termination of Coleman's employment with Lion. The parties agree that Coleman was Lion's Chief Executive Officer prior to his termination. In that position, Coleman was owed a salary of $180,000 a year, though he deferred almost all of his salary during his employment. It further appears undisputed that Coleman loaned money to Lion unrelated to his salary, and that Lion owes Coleman at least $350,000 as provided in a written promissory note ("Note 2").

Beyond these basic areas of agreement, the complaint and amended counterclaim present conflicting versions of the facts. Lion alleges that Coleman breached his agreement to defer his salary during his employment by withdrawing more than $130,000 from Lion's bank accounts. ECF No. 1 ¶¶ 8-12. Coleman denies that he made unauthorized withdrawals and alleges that when his employment with Lion ended in early 2025, Lion failed to pay his outstanding back salary (which exceeds $300,000) and further

2

failed to make timely payments on <u>three</u> promissory notes (including Note 2).   ECF No. 22, at 9-15.

In addition to contract disputes over Coleman's back salary and payments on promissory notes, Coleman alleges that Lion and the Third-Party Counter Defendants, the majority of whom are members of Lion's board of directors, engaged in improper conduct after Coleman's termination.   Specifically, Coleman alleges that the four individuals named as Counter Defendants ("the individual Counter Defendants") improperly transferred assets away from Lion to a newly formed entity, Mutant Inc. ("Mutant"), harming Coleman and another Lion shareholder.   ECF No. 22, at 11-12.

## II. PROCEDURAL HISTORY

Lion was the first to file suit, ECF No. 1, with Coleman responding <u>pro se</u> with a motion to dismiss as well as an answer and counterclaim.   ECF Nos. 10, 11.   Lion then moved to dismiss Coleman's counterclaim, ECF No. 13, which prompted Coleman to seek an extension of time to respond.   ECF Nos. 15, 16.   Colemen later responded by filing an amended counterclaim.   ECF No. 22.   This amended counterclaim, deemed timely by the Court, ECF No. 26, added the individual Counter Defendants and Mutant as parties.

In response to the amended counterclaim, Lion filed a motion to dismiss.   ECF No. 23.   Coleman, still proceeding <u>pro se</u>, did not timely serve the Third-Party Counter Defendants with the amended counterclaim, resulting in delays to the case.   ECF Nos.

3

31, 33, 38.   However, on January 20, 2026, counsel for Lion appeared and filed a Rule 12(b)(6) motion on behalf of all five of the Third-Party Counter Defendants.   ECF No. 34.   After the filing of Coleman's opposition brief and the Third-Party Counter Defendants' consolidated reply, the Third-Party Counter Defendants' Rule 12(b)(6) motion became ripe on February 17, 2026.[2] A Rule 16(b) scheduling conference is currently scheduled for March 27, 2026.   ECF No. 41.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a cause of action based on the plaintiff's failure to "state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

---

[2] As the filing of the Third-party Counter Defendants' 12(b)(6) motion appears to have forfeited any objections related to service of process, see Fed. R. Civ. P. 12(g)(2), (h)(1), the Court proceeds to the merits of the three outstanding Rule 12(b)(6) motions to dismiss.

4

Fair notice is provided when a complaint or counterclaim sets forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice. Id. (citing Twombly, 550 U.S. at 555).

To determine the legal sufficiency of a complaint or counterclaim under this standard, the Court does not resolve factual disputes or demand evidentiary proof. Instead, the Court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiff." Turner v. Thomas, 930 F.3d 640, 643 (4th Cir. 2019).

## IV. ANALYSIS

### A. COLEMAN'S RULE 12(B)(6) MOTION

Lion's complaint includes three Counts seeking money damages, all arising from Coleman's alleged improper withdrawals of funds from Lion's bank accounts. Count One alleges breach of contract, Count Two alleges breach of fiduciary duties, and Count Three alleges conversion.

5

Coleman's motion to dismiss these claims relies primarily on express denials of the accuracy of the facts as alleged in Lion's complaint. See e.g., ECF No. 10 (indicating that "Coleman vigorously disputes" the allegations that he improperly converted Lion's funds for his own use in breach of his contract with Lion and/or that he breached his fiduciary duties to the company). Specifically, Coleman identifies three "Grounds for Dismissal": (1) the vagueness of the complaint regarding the specific "funds that were supposedly converted by Coleman for his own use"; (2) the fact that Lion's breach of fiduciary duty claim overlooks all of the deferred salary payments and loans Coleman made to Lion "to ensure the company was able to keep operating"; and (3) the fact that Lion is in default on promissory notes and filed suit in a "blatant attempt . . . to abrogate [its] debt obligations to Coleman." Id. at 2-3.

Considering Coleman's first ground for dismissal, Lion has presented a short and plain statement of facts sufficient to plausibly allege that Coleman wrongfully withdrew over $130,000 from Lion's accounts and that such withdrawals were either a breach of contract, a breach of fiduciary duties owed to Lion, or an improper conversion of company funds for Coleman's personal benefit. Coleman fails to cite any case law or other legal standard that requires a detailed accounting of each improper transaction at the pleading stage, and the complaint in its current

form is sufficiently specific to provide Coleman "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (citation omitted). Accordingly, Coleman's effort to dismiss one or more counts of the complaint due to vagueness is unavailing.

Coleman's second and third arguments seeking dismissal depend on new counter-facts that do not appear in the complaint. Introduction of new facts is improper at the Rule 12(b)(6) stage as this Court is required to "accept[] all [of Lion's] well-pleaded facts as true" when evaluating the sufficiency of Lion's claims. Turner, 930 F.3d at 644; see Battlefield Builders, Inc. v. Swango, 743 F.2d 1060, 1063 (4th Cir. 1984) ("On defendants' motion to dismiss, they cannot introduce new allegations or new facts."); City of Huntington v. Lifehouse, Inc., No. CV 3:22-402, 2023 WL 4534618, at *4 (S.D.W. Va. July 13, 2023) (rejecting the defendant's Rule 12(b)(6) arguments because they were "dependent upon its preferred narrative of facts"). Because the Court must accept the truth of Lion's facts (rather that Coleman's counter-facts) when evaluating Coleman's motion to dismiss, Coleman's second and third arguments also fail. Coleman's Rule 12(b)(6) motion to dismiss is therefore **DENIED** in its entirety.

## B. LION'S RULE 12(B)(6) MOTION

Coleman's amended counterclaim includes five Counts seeking money damages: Count One – breach of contract due to failure to

pay promissory notes; Count Two - breach of contract and/or breach of state or federal law based on failure to pay back wages; Count Three - breach of fiduciary duty through stock transfers with Mutant; Count Four - conversion based on transferring assets, contracts, and contacts from Lion to Mutant; and Count Five - unjust enrichment through retaining the benefits of the share and asset transfer scheme. Lion's arguments seeking dismissal of each count are addressed in turn below.

### 1. Count One - Breach of Notes

Lion acknowledges that Coleman's first claim alleges a breach of contract for failure to timely pay three outstanding promissory Notes. ECF No. 24, at 4. Lion seeks dismissal of Count One to the extent it alleges a breach of Notes 1 and 3 due to Coleman's failure to specifically allege that he used a contractually approved method of communication (personal delivery, fax, overnight delivery, or registered mail) to demand payment or to notify Lion of its default. Id. at 5. In response, Coleman highlights that the amended counterclaim expressly alleges that all of the notes were past their maturity dates as of the time of filing of the Amended Complaint, meaning that Lion breached its promise to pay the principal and all accrued interest on the due date. ECF No. 28, at 4.

Lion, for its part, fails to cite any case law suggesting that, to plausibly state a breach of contract claim, Coleman must

plead with particularity the form of communication he used to demand payment _after_ Lion failed to comply with its express contractual obligation to repay the notes by their maturity date. Lion likewise fails to cite any authority suggesting that financial obligations past their due date need not be paid unless a proper "notice" is received.   Because Lion fails to undercut the plausibility of Coleman's claims alleging that Lion breached the three notes, Lion's motion to dismiss Count One is **DENIED**.[3]

### 2. Count Two – Failure to Pay Back Wages

Lion's motion seeking dismissal of Count Two begins by aptly noting the lack of clarity in the amended counterclaim regarding whether this Count asserts a breach of contract claim, a Fair Labor Standards Act ("FLSA") minimum-wage claim, and/or a Virginia Wage Payment Act ("VWPA") claim.   However, because Coleman is acting _pro se_ in this case, his pleadings must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed _pro se_ is 'to be liberally construed,' and 'a _pro se_ complaint, however inartfully pleaded, must be held to less stringent standards than

---

[3] Even if an approved "notice" must be identified in order to state a claim, the amended counterclaim alleges that a letter was sent by email to Lion's counsel in May 2025 demanding payment on Notes 2 and 3.  See ECF No. 22, at 10.  Coleman attached a copy of the letter to his amended counterclaim, and it remains to be determined whether such email satisfies the notice requirements.  See ECF No. 22-12; see also ECF No. 22-4, at 4 (making some reference to an "email of a .PDF document" as "notice" under the terms of Note 3).

9

formal pleadings drafted by lawyers.'" (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976))).

First, the amended counterclaim briefly refers to the FLSA to assert a claimant's legal ability to hold individual owners of a company personally liable for back wages under the FLSA. ECF No. 22, at 15-16. However, the amended counterclaim does not provide any facts indicating how Lion violated the FLSA minimum-wage or overtime compensation rules (or any other FLSA rules) in this case.[4] Count Two therefore fails to state a claim under the FLSA.

As to the contract and VWPA theories of relief, Lion asserts that they both fail because the amended counterclaim does not identify the date that Coleman's back wages became due. ECF No. 24, at 5-6. Lion, however, fails to cite any legal authority that requires pleading with such specificity, and Lion overlooks the reasonable inference that Coleman's deferral of his salary ended sometime in March 2025, the month that he was involuntarily terminated from Lion and first submitted an express demand for his back wages. ECF No. 22, at 9-10. Lion's inexact challenges to Coleman's legal theories fail to undercut the facial plausibility of Colemen's claim seeking hundreds of thousands of dollars in

---

[4] Even if Coleman had attempted to articulate an FLSA minimum-wage claim, such a claim may be barred under relevant federal regulations. <u>Compare</u> 29 C.F.R. § 541.600 (listing the minimum salary level for an "exempt executive"), <u>with</u> 29 C.F.R. § 541.101 (indicating that the salary requirements in § 541.600 do not apply to "business owners" who own "at least a bona fide 20-percent equity interest in the enterprise").

earned but deferred salary payments.  Accordingly, Lion's motion to dismiss Count Two is **GRANTED** as to the cursory reference to the FLSA, but it is **DENIED** in all other respects.

### 3. Counts Three through Five – Breach of Fiduciary Duty, Conversion, Unjust Enrichment

Lion's motion seeking dismissal of Counts Three through Five correctly notes that these three counts state a claim, if at all, against the Third-Party Counter Defendants because the amended counterclaim does not (1) include any facts suggesting that Lion, a corporation, owed a fiduciary duty to Coleman; (2) allege any actions taken by Lion that would constitute conversion of assets owned by Coleman; and (3) allege facts suggesting that Lion was "unjustly enriched" when its assets were depleted by the Third-Party Counter Defendants' purported misconduct.  Accordingly, to the extent these three Counts can even be interpreted as advancing claims against Lion, Lion's motion to dismiss such claims is **GRANTED**.[5]

---

[5] Contrary to Lion's assertion, ECF No. 24, at 12, an unjust enrichment claim can be pled as an alternative to a breach of contract claim.  See Hyundai Emigration Corp. v. Empower-Visa, Inc., No. 1:09cv124, 2009 WL 10687986, at *7 (E.D. Va. June 17, 2009).  However, Count Five as pled does not rely on Lion's failure to pay the notes or Coleman's salary; rather, the references to Lion in this Count are based on the "share exchange scheme" that purportedly left Lion "a shell company." ECF No. 22, at 19.  In light of Coleman's pro se status and the fact that Count Five both incorporates all earlier allegations and briefly references the note debt and back pay Lion owes to Coleman, the dismissal of Count Five is without prejudice.

## C. THIRD-PARTY COUNTER DEFENDANTS' RULE 12(B)(6) MOTION

The Third-Party Counter Defendants seek dismissal of all five claims alleged in the amended counterclaim.  As explained below, their motion is granted as to all counts.

### 1. Count One – Breach of Notes

The Third-Party Counter Defendants correctly argue that Coleman's own version of the facts alleges that <u>Lion</u> failed to make timely payment on the three notes.  ECF No. 22, at 12-15. Coleman does not plead any facts suggesting that the Third-Party Counter Defendants are parties to the notes, owe duties under the notes, or personally breached the notes by failing to make the required payments.  Accordingly, their motion to dismiss Count One is **GRANTED**.

### 2. Count Two – Back Pay

Construing the amended counterclaim in the light most favorable to Coleman, as is required at the Rule 12(b)(6) stage, this Count potentially asserts a breach of contract claim, a VWPA claim, and an FLSA claim based on Lion's failure to pay Colemen his salary.  ECF No. 22, at 15-16.  However, the only portion of this back pay claim that can reasonably be interpreted as stating a claim against the Third-Party Counter Defendants is the FLSA claim, because the amended counterclaim only asserts that <u>Lion</u> breached Coleman's employment contract and that <u>Lion</u> failed to make timely payment as required under the VWPA.  <u>Id.</u>

12

As to the FLSA claim, Coleman asserts that the individual Counter Defendants can "be held personally responsible for paying Coleman" under an FLSA provision rendering "owners, officers and supervisory personnel . . . liable for wages." Id. at 16; cf. Cornell v. Benedict, 301 Va. 342, 351, (2022) (holding that the VWPA "adopts a narrower definition of 'employer' than the FLSA and thus excludes individuals from implied employer liability"). Although Coleman is correct on the law, as discussed above in Part IV.B.2, the amended counterclaim fails to plausibly allege an FLSA violation as it does not satisfy the notice pleading standard, leaving the Counter Defendants to speculate how the FLSA was purportedly violated.    Furthermore, while Coleman's brief in opposition to dismissal argues that the Third-Party Counter Defendants participated in a "fraudulent scheme" to avoid paying his back wages, ECF No. 39, at 6-7, he fails to point to any facts in his amended counterclaim that are capable of stating a claim under the FLSA.    In fact, he does not even mention the FLSA in his opposition brief.    The Third-Party Counter Defendants' motion to dismiss Count Two is therefore **GRANTED**.

### 3. Count Three – Breach of Fiduciary Duty

Count Three of the amended counterclaim alleges that the individual Counter Defendants, all of whom are members of Lion's board of directors, had a fiduciary duty to "all the shareholders" of Lion to protect the rights of minority shareholders and to avoid

self-dealing and fraudulent practices.  ECF No. 22, at 17.  This Count focuses on the individual Counter Defendants' decision to incorporate Mutant and make an offer to Lion's owners to "exchange 2 shares in Mutant for every one share of []Lion."  ECF No. 22, at 17-22.  This offer was extended to all of Lion's shareholders except Coleman and his son, and purportedly allowed those involved to "enhance[] their own equity positions on an overall basis." Id. at 17-18.

Even accepting as true that the named directors breached their fiduciary duties by engaging in this stock swap, Coleman's factual allegations demonstrate that the duties that were allegedly breached flowed to the shareholders of Lion, not to Coleman as an individual.[6]  The amended counterclaim appears to acknowledge this reality, alleging that the acts of self-dealing enriched the actors "at the expense of 2 of the minority shareholders."  Id. at 17. Claims for harm to shareholders resulting from corporate directors' self-dealing cannot be brought directly by a lone shareholder, but must instead be brought derivatively on behalf of

---

[6] See Adelman v. Conotti Corp., 215 Va. 782, 789-90, 213 S.E.2d 774, 779 (1975) ("Under Virginia law an officer of a corporation, in his dealings with the corporation, has the same duty of fidelity which arises in dealings between a trustee and a beneficiary of the trust," a duty that also "applies to the conduct of the officers and directors . . . in their dealings with the corporation's stockholders."); Rowland v. Kable, 174 Va. 343, 366, 6 S.E.2d 633, 642 (1940) ("[A] director of a private corporation cannot directly or indirectly, in any transaction in which he is under a duty to guard the interests of the corporation, acquire any personal advantage, or make any profit for himself, and if he does so, he may be compelled to account therefor to the corporation." (emphasis added)).

the corporation. See Simmons v. Miller, 261 Va. 561, 576, 544 S.E.2d 666, 675 (2001) ("A shareholder ordinarily cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence or the like, on a cause of action which belongs to the corporation." (quoting 12B William M. Fletcher, Cyclopedia of the law of Private Corporations § 5924, at 497-99 (2000 rev. vol.)); DCG & T ex rel. Battaglia/Ira v. Knight, 68 F. Supp. 3d 579, 585 (E.D. Va. 2014) ("Virginia corporate law funnels fiduciary claims into derivative actions rather than allowing shareholders to sue directly," thus avoiding "a race to the courthouse."); Thornton v. Bernard Techs., Inc., No. Civ. 962-VCN, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009) (explaining that a "classic derivative formulation" occurs "[w]hen a director engages in self-dealing or commits waste" because that director is "tak[ing] from the corporate treasury and any recovery would flow directly back into the corporate treasury"); see also Anderson v. Bundy, 161 Va. 1, 21, 171 S.E. 501, 508 (1933) ("[N]o direct action lies to a creditor of a corporation against its directors . . . for improper performance or failure in performance of their duties" and "creditors must sue, not for any direct right of action in them, but in the right of the corporation.").

Here, while Coleman alleges the violation of a duty owed to minority shareholders, he does not attempt to bring his claim

15

derivatively.  Moreover, even if Coleman had labeled Count Three as a "derivative" claim, the amended counterclaim plainly does not satisfy the requirements for bringing a derivative action as set forth in Rule 23.1 of the Federal Rules of Civil Procedure.  Under Rule 23.1, a derivative claim brought by a shareholder on behalf of a corporation must be "verified," and must satisfy one pleading requirement "with particularity," Fed. R. of Civ. P. 23.1, a higher pleading standard than required under Rule 8(a).  Cf. Star v. TI Oldfield Dev., LLC, 962 F.3d 117, 134 (4th Cir. 2020) ("In evaluating a derivative claim, a federal court must determine the adequacy of pleading under federal law but determine the sufficiency of the [required] pre-suit demand under the substantive law of the state of incorporation . . . .").

Although some jurisdictions recognize a "closely held corporation" exception to the rule that generally requires fiduciary-duty claims against board members to be brought derivatively, the Supreme Court of Virginia has expressly rejected such exception.  See Simmons, 261 Va. at 576, 544 S.E.2d at 675 ("We decline to adopt a closely held corporation exception to the rule requiring that suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims.").  Accordingly, the Third-Party Counter Defendants' motion to dismiss Count Three is **GRANTED**.  See Battaglia/Ira, 68 F. Supp. 3d at 586

16

(granting a motion to dismiss two "direct claims for breaches of fiduciary duty" as Virginia law requires such causes of action to "be pursued only as derivative claims").

Although Count Three is dismissed, such dismissal is without prejudice to Coleman's right to file a second amended counterclaim. Coleman is proceeding pro se and it is possible that he was attempting to advance a derivative claim as he expressly alleges a violation of a duty flowing "to all the shareholders" of Lion. ECF No. 22, at 18. Though the liberal rules applicable to pro se parties' pleadings support granting Coleman leave to amend one final time, Coleman is **ADVISED** that (1) even though he is currently proceeding pro se, he remains bound by the Federal Rules of Civil Procedure and controlling case law; and (2) it does not appear that a derivative claim can be pursued by a pro se party, meaning that Coleman likely would have to retain counsel should he wish to advance any derivative claims. See Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997) ("[I]t is well established that a layperson . . . may not appear pro se to pursue a shareholder's derivative suit." (citation omitted)); Bluefeld v. Cohen, No. Civ. PX 15-2857, 2017 WL 1546406, at *3 (D. Md. Apr. 27, 2017) ("[B]ecause Plaintiff is proceeding pro se, he cannot maintain a derivative action.")); cf. Wojcicki v. SCANA/SCE&G, 947 F.3d 240, 244 (4th Cir. 2020) (concluding that "a relator cannot pursue a qui tam FCA suit pro se," because even "though the relator party has an

17

interest [in the case], it is not the sole interest at stake," and the Fourth Circuit has previously "considered — and rejected — the right of individuals to litigate pro se on behalf of others").

### 4. Count Four - Conversion

Count Four seeks to recover for "conversion" based on allegations that, following the stock swap, the Third-Party Counter Defendants transferred Lion's valuable assets to Mutant, leaving Lion a corporate "shell."[7] ECF No. 22, at 18. As argued by the Third-Party Counter Defendants, ECF No. 35, at 7, to state a claim for conversion a plaintiff must allege sufficient facts to plausibly support the inference that the plaintiff owned the assets at issue or had the right to immediate possession of such assets. Kirdassi v. White, 84 Va. App. 260, 297, 913 S.E.2d 311, 329 (2025). Here, however, the assets that were purportedly converted were corporate assets transferred from Lion to Mutant. See ECF No. 22, at 18 ("By stripping []Lion of all means of continuing as an operating business and moving it all to Mutant, [the Third-Party Counter Defendants] have in effect turned the company into

---

[7] Though Count Four alleges conversion, the context of such claim reveals that the facts discussed therein are also part of the fiduciary duty claim alleged in Count Three. Notably, the concluding sentence of Count Four expressly references the individual Counter Defendants "failing in their fiduciary duty to a minority shareholder." ECF No. 22, at 19. To the extent the allegations in Count Four assert a breach of fiduciary duty, such claim must be brought derivatively for the reasons discussed above.

a shell . . . .").[8]  Coleman's conversion claim, like the fiduciary claim that precedes it, must therefore be advanced as a derivative claim on behalf of Lion.   Instructively, on very similar facts, the Virginia Supreme Court has acknowledged the viability of a derivative conversion claim following a transfer of assets from one corporation to another to the detriment of a minority shareholder.  Simmons, 261 Va. at 582, 544 S.E.2d at 679 (finding "ample evidence to support the jury's verdict on the claim of conversion" that the plaintiff brought "in his derivative capacity for conversion of [corporate] assets"); see Cattano v. Bragg, 283 Va. 638, 648-49, 727 S.E.2d 625, 629-30 (2012) (explaining that "the return of funds, misappropriated by an officer, to the corporation [] is highly appropriate for a derivative claim," and that even if a corporation is "winding up" and being dissolved, "it is clearly in the interest of the corporation to have misappropriated funds returned"); Kirdassi, 84 Va. App. at 298-99, 913 S.E.2d at 329-30 (acknowledging the viability of a derivative conversion claim predicated on evidence that the defendants "wrongfully transferred" one company's assets to

---

[8] The amended counterclaim does reference "Coleman's contacts" among a list of converted assets, but it does not offer any other facts explaining the nature of this purported asset, nor does it offer any facts capable of supporting a reasonable inference that this was a personal asset belonging to Coleman rather than Lion.  Accordingly, the bald reference to "Coleman's contacts" within the context of a claim alleging the improper transfer of Lion's corporate assets to Mutant is too vague to plausibly state a conversion claim predicated on Coleman's personal property.

19

another, including the furniture, computers, and critical business equipment).

For the same reasons discussed in the preceding subsection, Coleman's amended counterclaim does not satisfy the requirements for pleading a derivate claim. See Fed. R. Civ. P. 23.1. Coleman also does not plead sufficient facts to plausibly state a direct claim alleging conversion of his own personal property. Accordingly, the Third-Party Counter Defendants' motion to dismiss the conversion claim is **GRANTED** without prejudice to Coleman's ability to file a second amended counterclaim.

### 5. Count Five - Unjust Enrichment

Coleman advances Count Five "[i]n the alternative" to all prior claims, and when read liberally, it alleges that the share exchange and asset transfer activity unjustly benefited Mutant and the individual Counter Defendants. ECF No. 22, at 19. Coleman asserts that the challenged conduct arose from "fraudulent and manipulative practice[s]" that harmed Coleman and his son. Id.

"The doctrine of unjust enrichment effects a 'contract implied in law' requiring one who accepts and receives goods, services, or money from another to make reasonable compensation for those services." James G. Davis Constr. Corp. v. FTJ, Inc., 298 Va. 582, 591, 841 S.E.2d 642, 647 (2020) (citation omitted). Under Virginia law, an unjust enrichment claim has three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the

20

defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." Id. at 597, 841 S.E.2d at 650.

As argued by the Third-Party Counter Defendants, ECF No. 35, at 8-10, Coleman's amended counterclaim does not plausibly allege a claim for unjust enrichment because Coleman fails to allege that he (as opposed to Lion) conferred a benefit on the individual Counter Defendants or Mutant in conjunction with the share exchange and asset transfer. To the extent that Coleman seeks to bring an unjust enrichment claim predicated on Mutant benefiting from Lion's assets, such a claim fails because it must be pursued as a derivative claim. Accordingly, the Third-Party Counter Defendants' motion to dismiss Count Five is **GRANTED** without prejudice.

### V. CONCLUSION

For the reasons set forth above, Coleman's motion to dismiss Lion's Complaint is **DENIED**. ECF No. 10. Lion's Motion to dismiss Coleman's amended counterclaim is **GRANTED without prejudice** as to Count Five; is **GRANTED with prejudice** as to Counts Three, Four, and the FLSA portion of Count Two; and is **DENIED** as to Count One and the remainder of Count Two. ECF No. 23. The Third-Party Counter Defendants' motion to dismiss the amended counterclaim is

**GRANTED without prejudice** as to Counts Three through Five, and is **GRANTED with prejudice** as to Counts One and Two.  ECF No. 34.

To the extent that Coleman elects to file a second amended counterclaim, he must do so **no later than April 14, 2026.**  If a second amended counterclaim is not filed by this date, the case will proceed with the remaining claims and counterclaims brought by the original parties.

A Rule 16(b) scheduling conference is currently scheduled for **March 27, 2026.**  Such conference will proceed as scheduled unless otherwise ordered by the Court.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to Mr. Coleman and to counsel of record for Plaintiff/Counter Defendants.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 24 , 2026

22